Filed 12/13/24  P. v. Harris CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B335872 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA082311) |
| v. | |
| YONGDA HUANG HARRIS, | |
| Petitioner and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Christopher W. Dybwad, Judge.  Affirmed.

Miriam K. Billington, under appointment by the Court of Appeal, for Petitioner and Appellant.

No appearance for Plaintiff and Respondent.

————————————

Yongda Huang Harris petitioned the superior court for a finding of factual innocence under Penal Code section 851.8, subdivision (c)[1], more than 10 years after the dismissal of a felony charge against him for possession of a blackjack. No arguable issues have been identified by Harris's appointed appellate counsel following her review of the record or by Harris in his supplemental letter brief to this court. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *October 5, 2012 Incident at LAX*

On October 5, 2012, Harris arrived at Los Angeles International (LAX) Airport from Japan. A United States Customs and Border Protection (Customs) officer noticed Harris was wearing what appeared to be body armor underneath his trench coat and selected him for secondary screening. Harris was found to be "wearing a ballistic vest with two steel trauma plates, flame-retardant leggings, and knee pads." (*Harris v. United States* (C.D.Cal., Aug. 9, 2017, No. 2:16-cv-05606-CAS) 2017 U.S.Dist. Lexis 127302, *2 (*Harris*).) Harris "voluntarily disclosed" to Customs officers that his luggage contained "[v]arious slapjack or sap[2] self defense items."

Harris's two pieces of checked luggage were searched. Customs officers found "a smoke grenade; three leadfilled billy clubs; a collapsible tactical baton[;] two human-sized bags; a bone

[1]    Undesignated statutory references are to the Penal Code.

[2]    "Black's Law Dictionary defines a 'sap' as '[a] club, a blackjack, a hose containing rocks in the middle, or any other object generally used as a bludgeon.'" (*People v. Mayberry* (2008) 160 Cal.App.4th 165, 170.)

saw; a folding saw; a hatchet; an ice pick; a gas mask with a set of extra filters; a full[-]body biohazard suit; two pairs of protective boot covers; an oven mitt; a set of cooking tongs[;] three black full-face ski masks; several pairs of protective eyeware [sic]; black tactical gloves; a box of black latex-free examination gloves; thin black fabric gloves[;] a blindfold; a white S&M style mask with zippers over the eyes and mouth; a set of hearing protection muffs; a large pair of headphones[;] three camping style hats; an eye patch; a false beard and adhesive; binoculars; knives[;] several rolls of duct tape; a pair of metal hand cuffs; a set of steel leg irons; numerous plastic flexi-cuffs in multiple sizes[;] batteries[;] a small digital video recorder; several blank video recording cassettes; a pair of wire cutters; three pairs of scissor; approximately 50 condoms; [and] an electronic device to repel dogs." (*Harris*, *supra*, 2017 U.S.Dist. Lexis 127302, at **2-3.)

Additionally, Harris's laptop computer was found to contain "Japanese anime and manga graphically depicting the rape, molestation, and sexual torture of children," "publications that dealt with instructing how to kill people," "guides to defeating alarms, locks and security systems," and "information regarding Rohypnol and other date-rape drugs." (*Harris*, *supra*, 2017 U.S.Dist. Lexis 127302, at **3-4.) In addition, "Harris had several cover letters seeking employment as an English teacher at various schools in Japan. There was a Word document which included the schedule for schools in Japan (Harris worked as an English teacher at a junior high school in Japan in 2011), which included notations about when children arrived and left school. The Word documents also listed about 24 remote, vacant plots of land in Japan, notations about the proximity of those locations to

3

different junior high and high schools, descriptions of the remoteness and isolation of each vacant lot, information about an hourly 'love hotel' in the same area as the school, and information about free graveyard land for Muslims in Japan." (*Id.* at p. *4.)

Harris was arrested.[3] (*Harris, supra*, 2017 U.S.Dist. Lexis 127302, at *5.)

B.    *The Federal Case*

In November 2012, a federal grand jury returned an indictment on one count charging that Harris "knowingly and willfully made material false, fictitious, and fraudulent statements on a customs declaration form," in violation of 18 U.S.C. section 1001. The indictment charged that Harris falsely identified China as the only country he had visited prior to arriving in the United States and lied about the value of the merchandise he had acquired abroad. (*Harris, supra*, 2017 U.S.Dist. Lexis 127302, at **6-7.)

In December 2012, Harris entered a guilty plea, and the district court placed him on probation for five years. The Ninth Circuit affirmed his conviction. (*United States v. Harris* (9th Cir. 2015) 611 Fed. Appx. 480, 481.) In 2017, Harris successfully moved under 28 U.S.C. section 2255 to set aside his guilty plea. (*Harris v. United States, supra,* 2017 U.S.Dist. Lexis 127302, at p. *28.) The district court determined that, before pleading guilty, Harris was never advised that an element of the charge under 18 U.S.C. section 1001 was that Harris knew his

---

[3]    The record is unclear as to which agency arrested Harris. However, Harris contends he was in the custody of the Los Angeles Police Department (LAPD), taken to a station, and questioned by LAPD detectives.

4

statements on the customs declaration form were false.  The court found Harris's plea was invalid on this basis and vacated the judgment and commitment order.  (*Id.* at **18, 27-29.)  The court subsequently granted the government's application to dismiss the indictment against Harris.  (*Harris v. United States* (C.D.Cal. Aug. 14, 2019, No. 2:16-CV-06169-CAS) 2019 U.S.Dist. Lexis 138439, *3 [referencing earlier proceeding in which indictment was dismissed].)

In 2019, the district court denied Harris's motion for expungement of his criminal records associated with the arrest at LAX, finding in part that Harris "fail[ed] to demonstrate that his arrests were unlawful or otherwise invalid."  (*Harris v. United States*, *supra*, 2019 U.S.Dist. Lexis 138439, at *15.)

C.    *The State Court Case*

In November 2012, the People filed a felony complaint for an arrest warrant alleging that on or about October 5, 2012, Harris "unlawfully manufacture[d], cause[d] to be manufactured, import[ed] into the State of California, ke[pt] for sale, offer[ed] and expose[d] for sale, and g[ave], len[t], and possess[ed] an instrument and weapon of the kind commonly known as a blackjack," in violation of section 22210.  On January 28, 2013, a copy of Harris's signed plea agreement regarding his federal conviction was filed with the superior court.  In May 2013, the trial court granted the People's motion to dismiss the case in the furtherance of justice pursuant to section 1385.

5

D.    *Section 851.8 Petition*

On April 24, 2023, Harris filed a motion for a finding of factual innocence under section 851.8.  He argued the LAPD wrongfully arrested him in October 2012 at LAX Airport because the officers "had no probable cause and no legitimate legal reason to arrest petitioner."  Harris contended section 22210 did not apply "to travelers transiting LAX who did not stay in the state of CA."  He requested appointment of counsel and a telephonic hearing.[4]

The superior court appointed counsel.  Harris's counsel filed a supplemental pleading arguing "[n]o reasonable person would believe that the defendant would be subject to California law since the jurisdiction [at LAX Airport] is solely controlled by the United States/federal government," and "[t]he incident should never have been reported to the local police (LAPD), for prosecution by the state government."  The petition did not cite any authority for the proposition that incidents that occurred at LAX Airport were subject to the exclusive jurisdiction of the federal government.

Similarly, at the hearing on the petition, Harris's counsel conceded he had no authority to support a finding of exclusive

---

[4]    The record includes a minute order from March 24, 2023, demonstrating the superior court granted Harris's petition under section 851.91 to seal his arrest record and to deem "the arrest . . . not to have occurred."  (§ 851.91, subd. (a) ["[a] person who has suffered an arrest that did not result in a conviction may petition the court to have his or her arrest and related records sealed" without a finding of factual innocence].)  In his April 2023 petition, Harris stated he did not want to seal his arrest record; instead, "he wanted [a] determination of factual innocence and expungement."

federal jurisdiction. The superior court denied the petition. The court concluded the state complaint "appears to [have] be[en] dismissed because [Harris] pled in federal court to . . . an event arising from the exact same stop that's the basis of the state prosecution." In reviewing the federal plea agreement, the court noted Harris "admitt[ed] specifically that his luggage [was] searched and . . . to currency in the luggage and making false statements. But that appears to suggest that, at the very least, the officers had a reasonable basis to bring the charge that was brought in the particular case." Harris did not attend the hearing.

Harris timely appealed. (§ 851.8, subd. (p)(1).) Although there is no right to appointed counsel for a section 851.8 petition or appeal (*People v. Scott M.* (1985) 167 Cal.App.3d 688, 702-703, disapproved of on other grounds in *People v. Adair* (2003) 29 Cal.4th 895, 908, fn. 6 (*Adair*)), counsel was appointed to represent Harris in this appeal. After a review of the record, Harris's appellate counsel filed a brief pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*) stating she did not identify any arguable issues and advised Harris that he could submit a supplemental brief identifying contentions this court should consider. On August 26, 2024, Harris filed a supplemental brief.

## DISCUSSION

### A. *Section 851.8*

"In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition . . . for a finding that the defendant is factually innocent of the charges for which the arrest was made." (§ 851.8,

7

subd. (c).) "A finding of factual innocence, however, shall not be made unless the trial court 'finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made.' " (*People v. O'Day* (2022) 85 Cal.App.5th 426, 432 (*O'Day*); see § 851.8, subd. (b).) "The defendant bears the initial burden of proof to show no such reasonable cause exists." (*O'Day,* at p. 433.) "Reasonable cause" is defined as "that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." (*Adair*, *supra*, 29 Cal.4th 895, 904 [cleaned up].)

"A petitioner's burden to establish factual innocence has been described as ' "incredibly high" ' and as requiring ' "no doubt whatsoever." ' " (*People v. Mazumder* (2019) 34 Cal.App.5th 732, 738.) "[T]he record must exonerate, not merely raise a substantial question as to guilt." (*Adair*, *supra,* 29 Cal.4th at p. 909; accord, *People v. Esmaili* (2013) 213 Cal.App.4th 1449, 1459.) "If the defendant makes the required showing, the burden of proof shifts to the prosecution to show the existence of reasonable cause." (*O'Day, supra*, 85 Cal.App.5th at p. 433.) The superior court may determine factual innocence based "upon declarations, affidavits, police reports, or any other evidence submitted by the parties which is material, relevant, and reliable." (§ 851.8, subd. (b).)

A section 851.8 petition "may be filed up to two years from the date of the arrest or filing of the accusatory pleading, whichever is later. . . . Any time restrictions on filing for relief . . . may be waived upon a showing of good cause by the petitioner and in the absence of prejudice." (§ 851.8, subd. (l).)

"[W]e apply an independent standard of review and consider the record de novo in deciding whether it supports the trial court's ruling." (*Adair*, *supra*, 29 Cal.4th at p. 905.)

B.    *The Superior Court Properly Denied Harris's Petition*

Harris was charged with violating section 22210, which punishes "any person in this state who . . . imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, or possesses any leaded cane, or any instrument or weapon of the kind commonly known as a billy, blackjack, sandbag, sandclub, sap, or slungshot . . . ."  The statute turns on possession and does not require proving malicious intent or wrongful use of the instrument or weapon.  (See *People v. Baugh* (2018) 20 Cal.App.5th 438, 443 ["Section 22210 criminalizes possession of all dangerous weapons, not just their use or the intent to use them."].)

Harris argues his petition for a determination of factual innocence should have been granted because (1) the search of his luggage was illegal; (2) he was not in possession of the prohibited item because the item was in his checked luggage; and (3) section 22210 did not apply to him because he was simply "transiting" the prohibited item through California on his way to Massachusetts, rather than "import[ing] it into the state."[5] Harris's contentions are meritless.

Harris suggests his petition for a factual innocence determination should be granted because an illegal search led to

---

[5]    Harris also complains about the treatment he received from LAPD officers while detained.  However, his alleged mistreatment is not relevant to whether he is factually innocent of the charge.

the recovery of the blackjack.  However, in deciding a section 851.8 petition, the superior court "may consider otherwise inadmissible evidence—such as police reports and evidence suppressed pursuant to section 1538.5," which addresses the exclusion of evidence based on an illegal search or seizure. (*Adair*, *supra*, 29 Cal.4th at p. 905.)  Thus, even if the blackjack found in Harris's checked luggage was the fruit of an illegal search, we may consider the presence of that blackjack in the luggage in determining whether Harris's section 851.8 motion was properly denied.

Harris also argues that he never had "physical control" of the items in his suitcase because "they were in secured checked luggage."  That contention likewise fails to demonstrate his factual innocence.  " 'The law recognizes two kinds of possession: actual possession and constructive possession.  A person who knowingly has direct physical control over a thing is then in actual possession of it.  A person who, although not in actual possession, knowingly has the right of control over a thing, either directly or through another person or persons, is then in constructive possession of it.' " (*People v. Azevedo* (1984) 161 Cal.App.3d 235, 242-43, disapproved of on other grounds by *People v. King* (2006) 38 Cal.4th 617.)  Thus, "[c]onstructive possession exists where a defendant maintains some control or right to control contraband that is in the actual possession of another." (*People v. Morante* (1999) 20 Cal.4th 403, 417.)

Harris concedes in his supplemental brief that "various slapjack or sap self defense items were found" in "his two checked bags," after he "voluntarily disclosed he had them" to Customs officers.  Harris's admissions demonstrate he had constructive possession of two checked bags, one of which contained the

blackjack.  (See *People v. Hampton* (1981) 115 Cal.App.3d 515, 523 ["Appellant's contention that he did not exercise dominion or control over the footlocker because he did not carry it is without merit.  Possession does not require actual physical contact; constructive possession is sufficient."].)  "Constructive possession . . . exists when one checks baggage with an airline."  (*United States v. Peart* (11th Cir. 1989) 888 F.2d 101, 105; see *United States v. Ocampo-Guarin* (1st Cir. 1992) 968 F.2d 1406, 1409-10 [defendant was in constructive possession of checked suitcase and the cocaine it contained where defendant was responsible for bringing the suitcase from abroad into the United States and there was no dispute she intended to reclaim suitcase].)

Harris also contends his luggage "was being automatically transferred onto a connecting flight" to Massachusetts, and section 22210 does not apply to persons just "transiting" a prohibited item through California to a final out-of-state destination.  Even assuming this fact would help exonerate Harris, he submitted no evidence in connection with his petition showing he had a connecting flight and did not intend to reclaim his luggage at LAX.

In sum, the record before us does not exonerate Harris from a charge pursuant to section 22210.  (See *Adair, supra,* 29 Cal.4th at p. 909.)

Harris also raises ineffective assistance of counsel claims, including counsel's failure to proffer the arguments raised in Harris's supplemental brief, to research the exclusive federal jurisdiction argument, and to inform the superior court that Harris's federal plea had been set aside and his conviction vacated.  Harris also contends that his counsel "prevent[ed] his client Mr. Harris from appearing by phone to bring up these very

cogent and essential legal facts to support his innocence" and "made his client miss the court hearing."

Harris did not have a constitutional right to counsel in connection with his section 851.8 petition, and thus any claim for ineffective assistance of counsel has no merit. (*People v. Scott M.*, *supra*, 167 Cal.App.3d at pp. 702-703 ["The proceedings contemplated by section 851.8 occur after any state action or criminal proceeding has terminated favorably toward the defendant, and the right to have records expunged is a purely statutory one, invoked against the state at the request of the subject of the records."]; cf. *People v. Boyer* (2006) 38 Cal.4th 412, 489 ["claim that habeas corpus counsel is burdened by an unconstitutional conflict of interest . . . lacks merit . . . because there is no constitutional right to the effective assistance of counsel in state habeas corpus proceedings"].)

In any event, counsel is not ineffective for failing to make arguments that lack merit. (See, e.g., *People v. Solomon* (2010) 49 Cal.4th 792, 843, fn. 24; *People v. Cudjo* (1993) 6 Cal.4th 585, 616.) Notwithstanding his assertion that he was prohibited from providing "cogent and essential legal facts" at the evidentiary hearing, Harris has not shown that the facts he would have provided were "material, relevant and reliable" to the court's determination of factual innocence. (Compare *People v. Chagoyan* (2003) 107 Cal.App.4th 810, 818 [superior court abused its discretion by not holding an evidentiary hearing where " 'the testimony appellant sought to present would have constituted "material, relevant and reliable" evidence [citation] on the issue of whether there was "reasonable cause to arrest him in the first place" ' "] with *People v. Mazumder*, *supra*, 34 Cal.App.5th at

p. 742 [no evidentiary hearing required under section 851.8 because petitioner was statutorily ineligible for relief].)

Although Harris faults his counsel for failing to alert the superior court that Harris was allowed to withdraw his plea in the federal case, he overstates the importance of that fact. Harris's plea was set aside because he was not advised that the government would have to prove he knowingly made false statements on his customs forms. The district court's decision did not suggest Harris was improperly arrested or was improperly charged with crimes based on the contents of his luggage. To the contrary, the district court later denied Harris's motion for expungement and found Harris "fail[ed] to demonstrate that his arrests were unlawful or otherwise invalid." (*Harris v. United States*, *supra*, 2019 U.S.Dist. Lexis 138439, *15.)

Finally, even assuming his counsel was incompetent in some respect, Harris has also failed to establish that a more favorable outcome would have resulted but for that incompetence. (*Strickland v. Washington* (1984) 466 U.S. 668, 697 ["a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies"]; *In re Clark* (1993) 5 Cal.4th 750, 766 [prejudice requires "a reasonable probability that a more favorable outcome would have resulted" absent counsel's alleged incompetence].)[6]

---

[6] We observe that Harris filed his petition more than 10 years after the accusatory pleading was filed, significantly beyond the two-year deadline to file a petition set forth in the statute. (§ 851.8, subd. (l).) Although the time restriction may be waived upon a showing of good cause and in the absence of prejudice, Harris did not explain the delay in filing his petition in the superior court or in this court.

No cognizable legal issues have been raised by Harris's appellate counsel or by Harris.  Further, we have independently reviewed the record and are satisfied no arguable issue exists. (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 231-232; see generally *People v. Kelly* (2006) 40 Cal.4th 106, 118-119; *People v. Wende* (1979) 25 Cal.3d 436, 441-442.)

## DISPOSITION

The order denying Harris's section 851.8 petition for a finding of factual innocence is affirmed.

STONE, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.